IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NUE, LLC d/b/a NUE SEATTLE,                     No. 3:20-cv-01449-HZ
individually and on behalf of all others
similarly situated,                                            OPINION & ORDER

        Plaintiff,

    v.

OREGON MUTUAL INSURANCE
COMPANY,

        Defendant.

Amy Williams-Derry
Gretchen Freeman Cappio
Ian S. Birk
Irene Margret Hecht
Lynn L. Sarko
Maureen M. Falecki
Nathan Nanfelt
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

     Attorneys for Plaintiff

Clark Benbow Holland
Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608

Jay W. Beattie
Lindsay Hart LLP
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201

R. Lind Stapley
Rachel A. Ruben
Soha Lang, P.S.
1325 Fourth Avenue, Suite 2000
Seattle, WA 98101

   Attorneys for Defendant

HERNÁNDEZ, District Judge:

   Plaintiff NUE, LLC d/b/a NUE SEATTLE brings this class action lawsuit against

Defendant Oregon Mutual Insurance Company, seeking a declaratory judgment that its insurance

policy, provided by Defendant, covers its business income losses stemming from the COVID-19

pandemic. Plaintiff alleges that Defendant breached its insurance contracts with Plaintiff and

similarly situated policyholders when Defendant denied coverage for Plaintiff's pandemic-

related business income losses and seeks damages for breach of contract. Defendant moves to

dismiss Plaintiff's Complaint for failure to state a claim.

   Many businesses suffered extreme hardship and financial loss as a result of the

government shutdown orders that state and local governments nationwide issued to curb the

spread of COVID-19 infections throughout the country. People across the world have lost their

lives and livelihood as a result of the pandemic. The Court sympathizes with the plight of

businessowners who suffered significant and even catastrophic financial losses as a result of the

government closure orders. Plaintiff's business insurance policy, however, does not cover its loss of business income. The Court grants Defendant's motion to dismiss.

## BACKGROUND

Plaintiff operates a restaurant and bar in Seattle, Washington, that serves "global street food." Compl. ¶¶ 5, 8, ECF 1. Plaintiff insured its business with a business insurance policy from Defendant. *Id.* ¶ 11. Due to the COVID-19 pandemic and business closure orders issued by the state of Washington, Plaintiff had to "suspend or dramatically reduce its restaurant business operations," leading to financial losses. *Id.* ¶ 9–10. Although the closure orders allowed restaurants to serve take-out food for off-premises consumption, Plaintiff's business revenues have significantly reduced because Plaintiff has been unable to use its dining room and full-service bar for on-premises food and beverage consumption. *Id.* ¶¶ 20–25. Plaintiff admits that the COVID-19 virus has not been detected in its restaurant. *Id.* ¶ 26.

Plaintiff filed an insurance claim seeking coverage for its financial losses stemming from its reduced business operations. *Id.* ¶ 31. Defendant denied coverage after it determined that Plaintiff's covered property did not suffer direct physical loss or damage. *Id.* ¶¶ 31–32. Plaintiff alleges that the "business income," "extra expense," "civil authority," and "ingress or egress" coverages in its business insurance policy require Defendant to cover Plaintiff's financial losses resulting from reducing its business operations. *Id.* ¶¶ 28, 30.

Section I of the Policy, which provides property coverage, states: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Stapley Decl. Ex. A ("Policy") at 8, ECF 8. The capitalized phrases in that sentence are defined terms. The phrase "direct physical loss of or damage to" is not defined in the policy. "Covered Property" includes Buildings,

Business Personal Property, or both, unless it is a kind of Property Not Covered. *Id*. A "Covered Cause of Loss" includes risks of "direct physical loss" unless the loss is excluded or limited by other provisions in Section I. *Id*. at 9.

The Policy provides "Additional Coverages" that include "Business Income," "Extended Business Income," "Extra Expense," and "Civil Authority" coverages. *Id*. at 12–14. The Business Income coverage provision states, in part:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id*. at 12. The Extended Business Income coverage provides, in part:

> If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur[.] . . . Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any covered cause of loss.

*Id*. at 12. The word "suspension" means "[t]he partial slowdown or complete cessation of your business activities" and "[t]hat a part or all of the described premises is rendered untenantable, if coverage for Business Income applies." *Id*. at 13.

> The Extra Expense coverage provides, in part:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id*. at 13. The Civil Authority coverage states, in part:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id*. at 14.

The Policy also includes an endorsement that covers problems with ingress or egress due to direct loss or damage to adjacent property ("Ingress or Egress Endorsement"):

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused when ingress or egress to the described premises is physically prevented due to direct loss or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* at 64.

The Policy also includes several exclusions. One of those exclusions relates to the enforcement of an ordinance or law ("Ordinance or Law Exclusion"):

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> **a. Ordinance Or Law**
> **(1)** The enforcement of any ordinance or law:
>     **(a)** Regulating the construction, use or repair of any property; or
>     **(b)** Requiring the tearing down of any property, including the cost of removing its debris.
> **(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:
>     **(a)** An ordinance or law that is enforced even if the property has not been damaged; or
>     **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

*Id.* at 18.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id. at 679*.

## DISCUSSION

Defendant moves to dismiss Plaintiff's complaint because no "direct physical loss of or damage to" property occurred to invoke coverage under the Business Income and Civil Authority coverages, and no "direct physical loss or damage to" property occurred that would provide coverage under the Extra Expense and Ingress or Egress coverages. Defendant also argues that the Ordinance or Law Exclusion excludes coverage for Plaintiff's losses. Plaintiff argues that the Policy's undefined terms "loss of," "damage to" and "direct physical loss" cover Plaintiff's loss of the functionality and use of its covered property for dine-in services due to the closure orders. The Court disagrees with Plaintiff.

///

## I.    Applicable Law

Defendant "assum[es] for purposes of this motion that Washington law applies" to the interpretation of the Policy[1], and Plaintiff's response relies on Washington law. Def. Mot. Dismiss (Def. Mot.) 7 n.10, ECF 7; Pl. Resp. Mot. Dismiss (Pl. Opp'n) 6, ECF 18. The Court finds that Oregon law applies to the resolution of Defendant's motion to dismiss.

A federal court sitting in diversity applies the forum state's choice of law rules to determine what law applies. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 975 (9th Cir. 2013). Thus, Oregon's choice of law rules will determine whether the Court should apply Oregon or Washington law to construe the terms of the Policy. *Id.*

Generally, when parties to a contract clearly express in the contract the law that applies, "the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen." Or. Rev. Stat. § ("O.R.S.") 15.350(1)–(2). Because the insurance contract does not contain a choice of law provision, O.R.S. 15.360 applies. O.R.S. 15.360 established the process for determining what law applies when the parties have not made an effective choice of law in the contract. Under that statute, the Court must identify the most appropriate law to apply by:

(1) Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;

(2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and

(3) Evaluating the relative strength and pertinence of these policies in:

(a) Meeting the needs and giving effect to the policies of the interstate and international systems; and

---

[1] Defendant noted, however, that it reserves the right to argue that another state's law applies to the construction of this policy. Def. Mot. 7 n.10.

> (b) Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states.

O.R.S. 15.360.

As to the first factor, the states with a relevant connection to the transaction and parties are Oregon and Washington. Defendant's principal place of business is located in Oregon. Def. Corp. Discl. Stmt. 1, ECF 5. Defendant issued an insurance contract that insured Plaintiff, a Washington business, and covered Plaintiff's business property located in Washington. Policy 5. The Policy includes an endorsement entitled "Washington Changes – Defense Costs" which outlines Defendant's right to recover defense costs incurred after issuing a reservation of rights letter to the insured. *Id.* at 74. Plaintiff's alleged losses occurred in Washington. Compl. ¶¶ 5, 27–28. Thus, both Oregon and Washington have a "relevant connection with the transaction or the parties[.]" *See Portfolio Recovery Assoc., LLC v. Sanders*, 366 Or. 355, 371 (2020) (holding that O.R.S. 15.360 does not limit "relevant connection[s]" to those that existed at the time of the transaction).

The second factor asks the court to identify the policies undergirding any apparent conflict in the relevant states' law. The Court finds that there is no apparent conflict between Washington and Oregon law concerning the interpretation of insurance contract language. *See Great Am. All. Ins. Co. v. Sir Columbia Knoll Assoc. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1104–05 (D. Or. 2019) (discussing both states' law and finding no apparent conflict). Neither party identifies any competing policies under the second factor that would require the Court to evaluate their strength and pertinence under the third factor. Thus, the Court will apply Oregon law. *Portfolio Recovery Assoc.*, 366 Or. at 374 ("... when the laws are not 'apparently

conflicting,' there is no path to choosing the law of another state unless the parties have made an 'effective choice' of law to govern the contract claim.").

## II.    Coverage Provisions

Defendant argues that Plaintiff's pandemic-related business losses are not covered under the terms of the Policy because no risk of direct physical loss to Plaintiff's business occurred. Determining whether insurance coverage exists is a two-step process. First, the insured bears the burden to establish that the loss falls within the policy's grant of coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas. Co.*, 222 Or. App. 453, 465 (2008). If the insured meets that burden, then the insurer bears the burden of establishing that an exclusion applies. *Id.*

To determine whether the Policy covers Plaintiff's alleged losses, the court must first decide whether Plaintiff's alleged losses were caused by or resulted from a "Covered Cause of Loss." The Policy defines Covered Causes of Loss as "[r]isks of direct physical loss" unless otherwise limited or excluded under other provisions of the Property coverage. Policy 9. Next, the Court must determine whether a Covered Cause of Loss caused or resulted in (1) "direct physical loss of or damage to property" as required to invoke coverage under the Business Income and Civil Authority Coverages; (2) "direct physical loss or damage to property," as required to invoke coverage under the Extra Expense coverage; or (3) "direct loss or damage to property, other than at the described premises," necessary to trigger coverage under the Ingress or Egress Endorsement. Policy 10–12, 66. If coverage exists, then the court must determine whether Plaintiff's claims fall within a policy exclusion.

Interpretation of an insurance policy is a question of law. *Holloway v. Rep. Indem. Co. of Am.*, 341 Or. 642, 649 (2006). To interpret an insurance policy, the court must "ascertain the intention of the parties to the insurance policy." *Id.* (citing *Hoffman Constr. Co. v. Fred S. James*

*& Co.*, 313 Or. 464, 469 (1992)). "If an insurance policy defines the phrase in question, [then the court] applies that definition." *Id.* at 650. If the insurance policy does not define the phrase, the court first considers whether it has a plain meaning. *Id.* If so, the court applies that meaning and conducts no further analysis. *Id.* If the phrase "has more than one plausible interpretation," then the court examines "the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Id.* (quotation marks and citation omitted). If a term of the policy remains ambiguous after engaging in those exercises, then "'any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company[.]'" *Id.* (quoting *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001)). A term is ambiguous only if it is susceptible to more than one plausible interpretation. *Id.*

Defendant argues that the relevant policy language is unambiguous, and Plaintiff argues that the language is broad enough to cover its losses or, alternatively, that it is ambiguous and should be construed against Defendant. Def. Mot. 8; Pl. Opp'n 5. The Court agrees with the courts which have construed the phrase "physical loss of or damage to covered property" and similar language and finds that the relevant policy language is unambiguous. *See, e.g.*, *Protégé Rest. Partners, LLC v. Sentinel Ins. Co., Ltd.*, ____ F. Supp. 3d ____, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) (finding the phrase "direct physical loss of or physical damage to" unambiguous); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *5 (D. Or. Aug. 4, 1999) (same). Thus, the Court will construe the terms of the Policy by applying the definitions of the defined terms and the plain meaning of the undefined terms. *Holloway*, 341 Or. at 650. The parties also implicitly agree that it is appropriate for the Court to decide this motion based on the Court's review of the Policy because it is incorporated by reference into Plaintiff's Complaint. Def. Mot. 4–6; Compl. ¶ 47.

### A.    Plain Meaning of Policy's Terms

Each of the coverage provisions apply only if a Covered Cause of Loss occurred. Policy 8 ("We will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."). A "Covered Cause of Loss" is defined in the Policy as a risk of "direct physical loss." *Id.* at 9. The court determines whether words have a plain meaning by "reference to the usual source of ordinary meaning, the dictionary." *Phillips v. State Farm Fire & Cas. Co.*, 302 Or. App. 500, 506 (2020) (noting that "directly" means "without any intervening space or time : next in order[;] . . . "in a straight line: without deviation of course." (quoting Webster's Third New Int'l Dictionary 641 (unabridged ed. 2002)). "Direct" means "'characterized by or giving evidence of a close esp. logical, causal, or consequential relationship.'" *Summit Real Est. Mgmt., LLC v. Mid-Century Ins. Co.*, 298 Or. App. 164, 177 (2019) (holding that "direct loss" means "loss resulting immediately and proximately from an event") (quoting Webster's Third New Int'l Dictionary 640).

"Physical" means "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary: material, natural[.]" Webster's Third New Int'l Dictionary 1706; *see also* 10A Couch on Insurance § 148.46 (3d ed. 2019) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"). The dictionary defines "loss" as "the act or fact of losing : failure to keep possession : deprivation;" or "an instance of losing[.]" Webster's Third New Int'l Dictionary 1338.

Applying those definitions, the Court concludes that for a Covered Cause of Loss to have occurred, Plaintiff must demonstrate that COVID-19 or Governor Inslee's executive orders caused harm to or destroyed its business property or dispossessed Plaintiff of its business property.

       i.      Meaning of "direct physical loss of or damage to property"

The Business Income provision covers the insured's lost income that is "caused by direct physical loss of or damage to property at the described premises." Policy 12. The Civil Authority provision covers business income when an action of civil authority prohibits access to the insured's property due to "direct physical loss of or damage to property" at a location other than the insured's property. *Id.* at 14. Thus, whether those provisions cover Plaintiff's losses turns on the meaning of "direct physical loss of or damage to property."

The word "damage" means "loss due to injury : injury or harm to person, property, or reputation[.]" Webster's Third New Int'l Dictionary 571. Applying that definition, the plain meaning of the phrase "direct physical loss of or damage to property" is direct (without any intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to property. The plain meaning of those terms thus requires a Covered Cause of Loss to directly cause property to be lost or physically damaged for coverage to exist under the Business Income and Civil Authority provisions. *See Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at *5 (D. Or. June 7, 2016) ("physical loss or damage" means "any injury or harm to a natural or material thing"), *vacated by stipulation of the parties*, 2017 WL 1034203 (Mar. 6, 2017); *Columbiaknit, Inc.*, 1999 WL 619100, at *5 ("'The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses.'" (quoting *Great N. Ins.*

*Co. v. Benjamin Franklin Fed. Sav. and Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990))). *Cf. Wy. Sawmills, Inc. v. Transp. Ins. Co.*, 282 Or. 401, 406 (1978) (Including the word "'physical' in the phrase 'physical injury to . . . tangible property' . . . negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'").

The Civil Authority provision extends coverage for loss of Business Income and necessary Extra Expense "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Policy 14. Thus, the Civil Authority provision requires that an action of civil authority prohibited access to Plaintiff's restaurants due to the loss, destruction, dispossession of or injury to property other than Plaintiff's property for coverage to apply.

      ii.     Meaning of "direct physical loss or damage to property" and "direct loss or damage to property"

The Extended Business Income coverage provides that the loss of business income must be caused by "direct physical loss or damage." *Id.* at 13. The Extra Expense coverage covers "direct physical loss or damage to property," Policy 13, and the Ingress or Egress Endorsement, Policy 64, provides coverage when "direct loss or damage to property" other than Plaintiff's property physically prevents ingress or egress to Plaintiff's property. Despite the slightly different phrasing, the parties do not argue that the phrase "direct physical loss or damage to property" and "direct loss or damage to property" have a different meaning from the phrase "direct physical loss of or damage to property." The Court thus assumes, without finding, that the three phrases have the same plain meaning for purposes of this opinion.

///

**III.    Application**

Having determined the plain meaning of the undefined terms of the Policy, the Court now

applies the plain meaning of those terms to the language of the Policy to determine whether

coverage exists.

A.    Business Income and Extra Expense Coverage

Defendant argues that the phrase "direct physical loss of or damage to property" and

"direct physical loss or damage" in the Business Income and Extra Expense provisions require

Plaintiff to lose of possession of its property or demonstrate a physical alteration in the condition

of its property for coverage to apply. Def. Mot. 9. The Court agrees.

Oregon courts have construed the phrase "direct physical loss of or damage to property"

and similar phrases to require some degradation in the condition of the property to invoke

coverage. In *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, this Court emphasized that a policy

that covers "direct physical loss"—and the inclusion of the word "physical" in particular—

covers only direct damage and does not extend to consequential damages. 1999 WL 619100, at

*4. Applying that construction, the Court held that the insurance policy of the plaintiff, a clothing

manufacturer whose property had suffered water intrusion damage resulting in water damage to

some of its merchandise, could recover only for the damage to the clothing directly damaged by

the water intrusion. *Id.* at *7. The court ruled that only articles of clothing that were "physically

changed in some manner," either by the water intrusion or the resulting mold and mildew spores,

were covered under the terms of the policy. *Id.* at *7–8.

The Oregon Supreme Court held in the context of a liability insurance policy that

including the word "physical" in the terms of the policy excluded coverage for consequential or

intangible damages. *Wyoming Sawmills*, 282 Or. at 406. In that case, the plaintiff sought

indemnification for damages it caused by selling defective lumber to a customer. *Id.* at 403. The

purchaser used the defective lumber as studs in a building, and the studs later warped and twisted. *Id.* The court held that the policy, which defined "property damage" as "physical injury to or destruction of tangible property," did not cover consequential damages such as diminished value but did cover the cost of labor for "tearing out and putting back other parts of the building . . . in order to replace the studs[.]" *Id.* at 404, 408.

The Ninth Circuit also has held that the phrase "direct physical loss" requires damage to a tangible item of property. *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004) (mem.) (holding that a business property insurance policy did not cover losses stemming from the removal of a producer's name from the film credits because film credits are not tangible property); *Commonwealth Enters. v. Liberty Mut. Ins. Co.*, 101 F.3d 705, at *2 (9th Cir. 1996) (table) (holding that tenants' fear of asbestos contamination that led tenants to vacate commercial buildings was not physical loss or damage covered under business interruption provision).

The Oregon Court of Appeals has held that methamphetamine odor in a home constituted "direct physical loss" within the meaning of an all-risk homeowner's insurance policy. *Farmers Ins. Co. of Or. v. Trutanich*, 123 Or. App. 6, 9–10 (1993). The court reasoned that the "odor was 'physical' because it damaged the house." *Id.* at 10. The court rejected the insurer's argument that *Wyoming Sawmills* compelled a finding of no coverage by distinguishing the building in *Wyoming Sawmills* from the odor-permeated home and personal items damaged by the methamphetamine odor. *Id.* at 11.

In *Great Northern Insurance Company v. Benjamin Franklin Federal Savings and Loan Association*, a tenant of a commercial building owned by the insured discovered asbestos while remodeling a unit and demanded that the insured remove the asbestos. 793 F. Supp. at 261, *aff'd*,

953 F.2d 1387 (9th Cir. 1992). When the landlord refused to and the tenant then vacated the unit,

the insured submitted a business interruption claim under its property insurance policy, which

covered "direct physical loss or damage." *Id.* The court ruled that coverage did not exist based on

the presence of asbestos in the building because "[t]here is no evidence here of *physical* loss,

direct or otherwise." *Id.* at 263. Affirming the district court, the Ninth Circuit held:

> We agree with the district court, applying Oregon case law, that [the insured's] loss
> did not result "from direct physical loss." While [the insured] no doubt sustained
> consequential loss caused by the necessity of cleaning up asbestos, we conclude
> that it did not sustain "direct physical loss."

953 F.2d 1387, at *1 (9th Cir. 1992) (mem.).

Plaintiff's Complaint does not allege a Covered Cause of Loss that would trigger

coverage under any of the relevant provisions of the Policy. Plaintiff does not allege that its

restaurant or the business personal property located inside it was lost, destroyed, or physically

changed in any manner. Nor does Plaintiff allege that any nearby property suffered direct

physical loss or damage that physically prevented ingress or egress from Plaintiff's restaurant or

that resulted in an action of civil authority that prohibited access to its restaurants.

Plaintiff's Complaint alleges that (1) "Due to COVID-19 and a state-ordered mandated

closure, Plaintiff was forced to suspend or dramatically reduce its business operations;" and (2)

"Since Governor Inslee's order on March 17, [2020,] Nue has been unable to have customers

enter into its dining room or eat any meals on its premises[;]" (3) "Nue has not been able to use

its restaurant for its full insured purpose of sit-down dining and full-service bar[;]" (4)

"Plaintiff's property cannot be used for its intended purposes; and (5) "No COVID-19 virus has

been detected on Plaintiff's business premises." Compl. ¶¶ 23–26, 29. Plaintiff also alleges that

its "property has sustained direct physical loss and/or damages related to COVID-19 and/or the

proclamations and orders." Compl. ¶ 27. Absent from those allegations are any facts from which

a factfinder could conclude that any of Plaintiff's property was lost or damaged. Plaintiff's conclusory allegations that it has suffered direct physical loss and damage are insufficient to state a claim. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal"). The absence of facts demonstrating any physical loss or damage to its business property is fatal to Plaintiff's claim.

Numerous courts in this circuit and around the country have reached the same conclusion that this Court reaches today. *See, e.g.*, *Protégé Rest. Partners, LLC*, 2021 WL 428653, at *4 (finding "direct physical loss of or physical damage to" unambiguous, that it requires a "distinct, demonstrable, physical alteration of the property" to invoke coverage, and noting that every California court to address COVID-19 business interruption claims to date has concluded that "government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute 'direct physical loss of or physical damage to' the insured property."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) (finding that even assuming presence of virus at the plaintiffs' business premises, business income losses were directly caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property); *Uncork & Create LLC*, 498 F. Supp. 3d 878, 883 (S.D. W. Va. 2020) (no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Johnson v. Hartford Fin. Servs. Grp.*, No. 20-cv-02000, ___ F. Supp. ___, 2021 WL 37573, at *7 (N.D. Ga. Jan. 4, 2021) ("COVID-19 hurts people, not property"); *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, No. 2:20-cv-01240-JAD-NJK, 2021 WL 769660, at *3 (D. Nev. Feb. 26, 2021) (ruling that

"pure, economic losses caused by COVID-19 closures do not trigger policy coverage predicated on "direct physical loss or damage"); *Levy Ad Grp., Inc. v. Chubb Corp.*, No. 2:20-cv-00763-JAD-DJA, 2021 WL 777210, at *3 (D. Nev. Feb. 16, 2021) (same); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-00597-BJR, 2021 WL 2184878, at *10–11 (W.D. Wash. May 28, 2021) (granting insurer's dispositive motions in consolidated actions against ten groups of insurers brought by hundreds of Washington businesses and finding that COVID-19 does not cause "direct physical damage to" or "direct physical loss of" property).[2]

Construing the allegations in the light most favorable to Plaintiff, the losses Plaintiff alleges are purely economic and not the result of any "direct physical loss of or damage to property." Plaintiff's pleadings attempt to characterize the harmful effects of government closure orders issued in response to the public health crisis presented by the pandemic as "physical loss" or "physical damage," but no physical loss of or physical damage to its property occurred. As a result, no coverage exists under the Business Income and Extra Expense provisions of the Policy. The Extended Business Income provision applies "[i]f the necessary suspension of your 'operations' produces a Business Income Loss payable under this policy." Policy 12. Because the Court concludes that no Business Income Loss is payable under the policy, no coverage exists under the Extended Business Income provision. Policy 12.

///

///

---

[2] *See also Newman Myers Kreines Gross Harries, P.C. v. Gr. N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding that the phrase "direct physical loss or damage . . . unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage."); *Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co.*, 939 F. Supp. 2d 1059, 1069 (D. Haw. 2013) (finding that "direct physical loss or damage" means "that an event had a direct impact and proximately caused a loss related to the physical matter of the Property").

      i.      The Policy does not cover an "impairment of functionality" of undamaged dining rooms and related property.

Plaintiff argues that the phrases "loss of" and "damage to" have different meanings from one another and that Plaintiff can recover for a loss of undamaged property. Pl. Opp'n 7–8. The Court agrees. *See Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908AB (KSx), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018) ("[t]o interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter canon on contract interpretation—that every word be given a meaning."). But the Court declines to adopt the definition of "loss" that Plaintiff argues the Court should apply. Plaintiff argues that the Court should apply definitions of the word "loss" that include loss of use. But that argument ignores the context in which those words appear in the Policy. "Loss" and "damage" do not appear in isolation. Those words are modified by the word "physical." The modification of those words by the word "physical" means that the insured must demonstrate a loss that is physical in nature, which requires that the loss involves a loss of possession or presence of the property:

> In order to trigger coverage under a direct physical loss theory, an outside peril must cause an inability to interact with the property because of an alteration to its physical status. COVID-19, and more specifically the Governor's Proclamations, may have limited the uses of the property by preventing certain indoor activities previously conducted on the premises, but they did not cause dispossession of the buildings [or the business personal property located in them].

*Ngyuen*, 2021 WL 2184878, at *10–11. The requirement that "physical loss" requires physical dispossession or loss of the presence of property for coverage to exist is consistent with the authority cited by Plaintiff. For example, Plaintiff cites *Nautilus Group, Inc. v. Allianz Global Risks US* for the proposition that a covered "physical loss" can occur in the absence of any damage. Pl. Opp'n 8–9. In *Nautilus*, the district court found that the insured had suffered a covered physical loss when a disgruntled employee whose employment had been terminated took

important business documents necessary to keep the business open and refused to return them.
*Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at *2–3, 7
(W.D. Wash. Mar. 8, 2012). *Nautilus* is distinguishable from the facts of this case. In *Nautilus*,
the insured physically lost possession of the important business documents when the disgruntled
employee stole them. *Id.* at *7. Plaintiff's Complaint alleges no similar loss of business property
that would trigger coverage under the Policy.

The selective definition of "loss" that Plaintiff urges the Court to apply would render the
word "physical" surplusage and is contrary to longstanding insurance law doctrine which
provides that all-risk insurance policies are intended to cover damage to property, not economic
loss. *Ngyuen*, 2021 WL 2184878, at *11 (finding that the "Plaintiffs conflate *physical* loss with
non-physical loss of use.").

> The requirement that the loss be "physical," given the ordinary definition of that
> term, is widely held to exclude alleged losses that are intangible or incorporeal and,
> thereby, to preclude any claim against the property insurer when the insured merely
> suffers a detrimental economic impact unaccompanied by a distinct, demonstrable,
> physical alteration of the property.

*Generally; "Physical" loss or damage*, 10A Couch on Ins. § 148:46 (3d ed. Supp.
2021) (footnotes omitted). As a result, although the word "loss" in isolation has a meaning that
could incorporate intangible losses, the Court declines to adopt that definition because "loss" is
modified by "physical" in the Policy.

The plain meaning of the policy language and the multitude of cases interpreting identical
and similar language make clear that "direct physical loss of or damage to property" does not
include a loss of use or "impairment of functionality" of undamaged property for its intended
purpose. *See, e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021)
(holding that policy covering direct "accidental physical loss or accidental physical damage" did
not cover oral surgeons' "partial loss of use of its offices" due to "due to the COVID-19

pandemic and the related government-imposed restrictions.") (emphasis omitted); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 298 (S.D. Miss. 2020) ("Plaintiff's *operations* are not what is insured—the building and the personal property in or on the building are."). Even affording Plaintiff the most liberal reading of its allegations, its Complaint alleges only that government orders restricted the manner in which its restaurant may serve customers, while leaving the property itself in Plaintiff's possession, unharmed, and undamaged. As a result, Plaintiff has failed to allege a direct physical loss of or damage to its covered property.

Plaintiff also argues that the Policy defines "Property damage" to include loss of use. Pl. Opp'n 10 (citing Policy 43). The portion of the Policy Plaintiff cited is contained within the "Liability And Medical Expenses Definitions". The Property Coverage section has a definitions section within it called "Property Definitions," and that section includes no definition of property damage. Because each section of the policy contains its own set of definitions, there is no indication that the definitions for the liability and medical expenses sections apply to any other section. Accordingly, the Court declines to apply the definition of "Property damage" from the Liability and Medical Expense section of the Policy to the Property coverage terms.

        ii.    Whether property must become completely uninhabitable or be rendered completely useless to invoke coverage

Plaintiff also contends that a line of cases finding that direct physical loss or damage had occurred after a contaminant rendered the property uninhabitable or useless applies to the facts of this case. Pl. Opp'n 11. Plaintiff relies on cases from other districts and state courts to suggest that "physical loss or damage" occurs when business property becomes useless or only partially inhabitable. *Id.* at 11–12. The Court finds those cases unpersuasive and distinguishable.

Plaintiff first relies on *Port Authority of New York and New Jersey v. Affiliated FM Insurance Company*. Pl. Opp'n 11–12. In *Port Authority*, the plaintiff attempted to recover from

its insurance company the cost of asbestos abatement in several locations in its buildings. 311 F.3d 226, 230 (3d Cir. 2002). Air sampling results demonstrated that the presence of asbestos fibers did not exceed EPA limits, and the buildings continued to remain in use. *Id.* at 231. The plaintiff's insurance policy covered "ALL RISKS of physical loss or damage." *Id.* The Third Circuit affirmed the district court's conclusion that physical loss or damage occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable. *Id.* at 236. Plaintiff argues that the holding of this case is not limited to situations in which a building is completely useless or uninhabitable but also applies to situations in which a building is only partially useless or uninhabitable. Pl. Opp'n 12. As a result, Plaintiff argues, complete loss of utility of some of its property is enough to trigger coverage. *Id.*

The distinguishing fact between *Port Authority* and other cases in which courts found that physical loss or damage had resulted from contamination by a harmful substance is that in those cases, the contamination either 1) physically damaged the property requiring repairs or remediation to part or all of the building, or 2) rendered the property completely uninhabitable. *See, e.g.*, *Or. Shakespeare Festival Ass'n*, 2016 WL 3267247, at *5 (finding business interruption coverage applied when poor air quality from wildfire smoke rendered performance of a play unsafe for performers and guests); *Stack Metallurgical Servs, Inc.*, 2007 WL 464715, at *8 (finding that the disintegration of a hammer in a furnace that contaminated it with lead particles constituted "direct physical damage"); *Ass'n of Apartment Owners of Imperial Plaza*, 939 F. Supp. 2d at 1069 (finding that arsenic contamination in a concrete slab requiring remediation and replacement constituted "direct physical loss or damage"). Plaintiff's restaurant was neither physically damaged or completely uninhabitable.

The Third Circuit's reasoning in *Port Authority* makes clear that to establish the existence of physical damage sufficient to trigger coverage, the insured must demonstrate that the "actual release of asbestos fibers" resulted in a level of contamination that nearly eliminated or destroyed the function of the building. First, Plaintiff alleges no actual release of any contaminant in its restaurant, so *Port Authority* is distinguishable. Second, it is the quantity of released asbestos fibers that informed the analysis of whether a loss of utility had occurred that was significant enough to amount to loss or damage:

> The effect of asbestos fibers in such quantity is comparable to that of fire, water or smoke on a structure's use and function. A less demanding standard would require compensation for repairs caused by the inevitable deterioration of materials used in the construction of the building. This outcome would not comport with the intent of a first-party "all risks" insurance policy, but would transform it into a maintenance contract.

*Port Auth. of N.Y. and N.J.*, 311 F.3d at 236.

The same is true of the other cases cited by Plaintiff. *See, e.g.*, *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418 (WHW)(CLW), 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (building rendered completely uninhabitable due to ammonia gas infiltration). Plaintiff's argument thus has two flaws. First, Plaintiff failed to allege any contamination of its restaurant that rendered it physically uninhabitable. Second, Plaintiff's assertion that those cases demonstrate that any "loss of functionality" caused by contamination is covered is an overbroad reading of the rulings in those cases, which apply to contaminations in such quantities that render buildings temporarily completely uninhabitable. Plaintiff has alleged no similar facts.

B.     Civil Authority Coverage and Ingress and Egress Endorsement

For coverage to exist under the Civil Authority provision, Plaintiff must plausibly allege that "direct physical loss of or damage to property, other than at the described premises," occurred. Plaintiff's Complaint alleges that it remained able to access and use its restaurant for

some purposes after the Governor's closure orders. Compl. ¶¶ 21, 23. None of the allegations in Plaintiff's Complaint allege any "direct physical loss of or damage to" any property other than its own. Plaintiff argues that its allegations that the Governor's orders prohibited the gathering of people for public food and beverage consumption are sufficient to establish that direct physical loss of or damage to property occurred to other properties. Pl. Opp'n 20. The Court disagrees. The conclusory allegation that coverage exists under the Civil Authority provision in the absence of an allegation that loss or damage occurred to another property fails to plausibly allege a claim for coverage. *See* Cousins, 568 F.3d at 1067 ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal").

The Ingress or Egress Endorsement provides coverage "when ingress or egress to the described premises is physically prevented due to direct loss or damage to property, other than at the described premises[.]" Plaintiff's Complaint alleges no physical barrier to ingress and egress from its restaurants caused by "direct loss or damage to property" at a location near its restaurants. The Civil Authority coverage and the Ingress or Egress Endorsement thus do not provide coverage.

## IV.      Context within the Policy as a Whole

When the terms of an insurance policy have plain meaning, then the Court applies the plain meaning without need to resort to other methods of contract interpretation. *Holloway*, 341 Or. at 650. However, it is worth emphasizing that the context in which the phrases "direct physical loss," "direct physical loss of or damage to property," and "direct physical loss or damage to property" appear in the Policy confirms the accuracy of the Court's conclusion that the Policy requires a direct physical alteration of the condition of the property or dispossession of the property for coverage to apply.

The Policy covers Plaintiff's business liability and provides property coverage. Policy 8. Section I of the Policy, which covers "PROPERTY", explains that "Covered Property" includes items of tangible property including "Buildings," which are defined as "the buildings and structures at the premises" and their fixtures, additions, and permanently installed machinery; and "Business Personal Property." *Id.* All items described in the definition of "Covered Property" are tangible items. The "Property Not Covered" also includes a list of tangible items. *Id.* at 8–9. Nothing in the Policy suggests that Covered Property includes intangible things like profitability, business operations, and loss of use. When read in the context of the Policy as a whole, the phrases "direct physical loss," "direct physical loss of or damage to," and "direct physical loss or damage to" refer to the loss of or damage to the Covered Property—the building, its fixtures, and the personal property in it—and the loss of business income resulting from the insured's inability to continue its business operations as a direct result of having lost or damaged that tangible property.

The definition of "period of restoration" also supports the Court's interpretation that loss of or damage to tangible property must occur to invoke coverage under the Policy. The Business Income and Extra Expense provisions of the Policy provide coverage for certain losses "during the 'period of restoration.'" Policy 12–13. The "period of restoration" starts seventy-two hours after the "physical loss or damage" occurs and ends on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when the insured's "business is resumed at a new permanent location." *Id.* at 29–30. That description of "period of restoration" implies that Plaintiff must lose or suffer physical damage to its tangible property which requires repair or replacement to invoke coverage.

The "Loss Payment" section of the Policy which governs how Defendant will pay for damage to Covered Property also demonstrates that property must be physically lost or damaged to invoke coverage. That provision allows the insurer to decide whether it will

(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property;
(3) Take all or any part of the property at an agreed or appraised value; or
(4) Repair, rebuild or replace the property with other property of like kind and quality[.]

*Id*. at 23. The option of the insurer to decide whether to repair, replace, or take and pay the insured the value of damaged property also suggests that to invoke coverage (1) the loss or damage of the property must be tangible; and (2) the property must have had an initial satisfactory state that changed to an unsatisfactory state when an external force acted on the property. The "Loss Payment" provision is entirely inconsistent with the Policy covering an inability to use undamaged restaurant buildings and dining rooms. An inability to use property in the manner the insured intended is not something that can be repaired, rebuilt, or replaced.

## V.      Ordinance or Law Exclusion

Defendant argues that even if Plaintiff had stated a plausible claim for coverage, the Ordinance or Law exclusion excludes Plaintiff's claims. Def. Mot. 21–23. That provision excludes from coverage "loss or damage . . . caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property." Policy 18. Plaintiff argues that Defendant cannot now assert that this exclusion applies because Defendant did not rely on the exclusion as the basis for denying coverage. Pl. Opp'n 21. Plaintiff also argues that the exclusion does not apply because the Governor's executive order is not an "ordinance or law" and does not "regulat[e] the construction, use or repair of any

property." *Id.* at 21–22. Because Plaintiff has not demonstrated that coverage exists, the Court

need not determine whether any exclusion applies. *See ZRZ Realty Co.*, 222 Or. App. at 465.

## VI.    Leave to Amend

Because the Court finds that Plaintiff's Complaint cannot be amended to plausibly allege

a claim under the terms of the Policy, the Court denies leave to amend. *Wheeler v. City of Santa

Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if amendment

would be futile[.]").

**CONCLUSION**

The Court GRANTS Defendant's Motion to Dismiss [7]. Plaintiff's Complaint is

dismissed with prejudice.

IT IS SO ORDERED.

DATED:  September 4, 2021      .

MARCO A. HERNÁNDEZ
United States District Judge